IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**YOLANDA COMMON,**

*Plaintiff*,

v.

CAUSE NO. 3:20-CV-745-CWR-LGI

**JACKSON MUNICIPAL AIRPORT AUTHORITY,**

*Defendant*.

## ORDER

Before the Court are the Defendant's motions for summary judgment and for leave to file excess pages. Docket Nos. 73 and 82. The motions are fully briefed and ready for adjudication. Upon review, the motion for summary judgment will be granted in part and denied in part, while the motion for leave to file excess pages will be granted.

**I.      Factual and Procedural History**

Defendant Jackson Municipal Airport Authority ("JMAA") manages the Jackson-Medgar Wiley Evers International Airport and Hawkins Field. Plaintiff Yolanda Common is a Black female police officer who began her employment with JMAA in September 2014. Docket No. 73-1. Common initiated this suit on November 18, 2020. Docket No. 1. She alleges the following claims against JMAA: race- and sex-based discrimination under Title VII, race- and sex-based hostile work environment under Title VII, and pay discrimination under the Equal Pay Act ("EPA"). *Id.*

Prior to working at JMAA, Common had 13 years of law enforcement experience, including four years as Chief of the Tchula, Mississippi Police Department. Docket No. 79-3 at 2. In September 2014, JMAA hired Common as a Certified Police Officer ("CPO") with a starting pay of $15.18 per hour, Docket No. 73-1, or $31,580.64 per year. Docket No. 79-3 at 3. At this time, JMAA had a CPO salary range of $30,076 to $47,796 per year. Docket No. 79-3 at 2. That range was narrowed to $32,000 to $44,000 in 2017. Docket No. 73-3 at 18. On January 26, 2019, Common received a salary increase to $33,920. Docket 79-1 at 2.

Common applied for an investigator position within JMAA and received an offer for the position on April 2, 2019. Docket No. 73-5. She accepted the offer and was promoted to investigator with an increased salary of $36,420. *Id.*

In her new role, Common's hours changed to a set Monday through Friday, 8:00 a.m. to 5:00 p.m. shift. Docket No. 73-2 at 15. That was a change from her previous position as a CPO, where she worked on a rotating shift schedule. *Id.* at 5. Common's new duties included "investigat[ing] criminal and non-criminal matters; gather[ing] and preserv[ing] evidence pertinent to various investigations; [and] prepar[ing] written reports and organiz[ing] evidence for presentation to prosecuting attorneys." Docket No. 73-6 at 1. Chief Dee McClendon noted, however, that JMAA's caseload of investigative work typically consisted of five or fewer cases a week, or "an hour at the most" per week. Docket No. 73-3 at 16. So Common was told that if a patrol shift was short, she would have to fill in. *See* Docket No. 73-2 at 19-20 and Docket No. 74 at 3.

Shifts were regularly short, and Common was often asked to fill in on patrol. Docket No. 74 at 3. If Common was too busy with investigative work, she had to tell the patrol sergeants who requested her assistance. Docket No. 73-4 at 5-6, 9-12. If there were any

2

disagreements about which duties took priority, the parties were instructed to contact Chief McClendon. *Id.*

Sergeants Joshua Hayman, a white man, and Anderson Jones, a Black man, frequently asked Common to work on their shifts when they were short. Docket No. 73-2 at 20-22. The other shift sergeants, Tonora Humphrey, a Black woman, and Michael Lee, a Black man, did not utilize Common as often. *Id.* at 22. Common complained to Chief McClendon about the excessiveness to which Hayman and Jones utilized her. *Id.* at 20-22. Chief McClendon investigated and found each complaint meritless. Docket No. 73-4 at 7-12.

On one occasion, Common and Hayman got into a verbal altercation; Hayman cursed at Common. Docket No. 73-4. At a meeting between Common and Chief McClendon following the incident, Common said she would be filing formal complaints against Jones and Hayman. *Id.* Then, Chief McClendon held a meeting in which he reiterated to Jones and Hayman that they were only to utilize Common when necessary and restated the guidelines for requesting her assistance. *Id.*

In March 2020, the COVID-19 pandemic had reached Mississippi. Governor Tate Reeves issued a State of Emergency. This led JMAA to initiate a reduction-in-force ("RIF"). Docket No. 73-9 at 4-5. JMAA's Board of Commissioners ordered department heads to select employees for the RIF based on the following criteria: "(1) '[j]ob function as it relates to the needs of the organization' and (2) '[j]ob tenure less than 60 days.'" Docket No. 80 at 4 (citing Docket No. 73-11). On April 2, 2020, pursuant to the RIF, Common was terminated. Docket No. 73-13.

Common subsequently applied for unemployment benefits, Docket No. 73-14, and pandemic unemployment assistance, Docket No. 73-15. On June 29, 2020, she filed a Charge

of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Charge checks the box for race discrimination only. Docket No. 3-1. Common alleges, however, that the allegations outlined in the Charge also focus on sex discrimination, and that the lack of notation was just an error on the part of the EEOC. Docket No. 80 at 5. On August 19, 2020, the EEOC issued Common a right to sue letter. Docket No. 3-2. Common initiated this lawsuit shortly thereafter.

After discovery, JMAA filed the present motion for summary judgment. It argues that (1) Common has not exhausted her administrative remedies due to checking only the box for racial discrimination; (2) Common has no similarly-situated employees to compare herself to, and even if her proffered comparators are deemed similarly situated, any pay discrepancy is due to a difference in qualifications, new salary range, time of hiring, and local job market; and (3) Common has no evidence to suggest that she was fired on the basis of race and/or sex, because she was fired in connection with a RIF caused by COVID-19. Docket No. 74.

In her response brief, Common argues that the investigator position was merely a title change, and she was still functionally a CPO. Docket No. 80 at 8. As a result, CPOs James Hollowell, Eric Pierson, Jamall Christian, William Bright, and Melvin Alexander were all sufficient comparators. *Id.* at 8-9. Common's chart showing all of these CPOs' salaries is reproduced here:

4

| NAME | SEX | RACE | HIRE DATE | STARTING SALARY | 2020 SALARY |
|---|---|---|---|---|---|
| James Hollowell | Male | White | 5/6/2018 | $38,000 | $39,325 |
| Eric Pierson | Male | Black | 3/16/2020 | $39,000 | $39,000 |
| William Bright | Male | White | 6/18/2018 | $38,000 | $38,000 |
| Melvin Alexander | Male | Black | 9/2/2019 | $37,000 | $37,000 |
| Yolanda Common | Female | Black | 9/29/2014 | $31,580 | $36,420 |

*Id.* at 4. Common further argues that the reasons JMAA provided to explain the pay discrepancy, such as change of salary range, time of hiring, and military experience, are merely pretexts for discrimination, and that JMAA did not follow its own RIF guidelines when it terminated her. *Id.* at 20. What's more, she adds, JMAA hired five male employees after the RIF. *Id.* at 21.

In reply, JMAA doubles down on its justifications for the pay discrepancies. Docket No. 83. It also contends that Common should not be allowed to mention salary details for the time prior to her becoming an investigator, because they were not mentioned in the EEOC Charge. *Id.* JMAA also moved for leave to exceed the page limitation. Docket No. 82.

II.  **Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the movant's burden to identify the "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). "If the moving party fails to meet

5

this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* (internal citations omitted).

If the movant meets this burden, however, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts" to show that there is a genuine issue of material fact. *Jones v. U.S.*, 936 F.3d 318, 321 (5th Cir. 2019) (internal citations omitted). When considering the record, the Court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. *Id.*

### III. Discussion

For each of Common's Title VII claims, JMAA first contends that dismissal should be granted for failure to exhaust administrative remedies, since sex-based discrimination was not specifically checked in her EEOC Charge of Discrimination. Docket No. 74 at 7. Common responds that she discussed instances of sex-based discrimination in her Charge sufficient to assert a claim of sex-based discrimination. Docket No. 80 at 15. The Court is inclined to agree with her.

The exhaustion requirement attempts to strike a balance between liberal construction and the importance of pre-judicial resolution. In striking that balance, the Court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

After doing so here, the Court finds that Common sufficiently alleged sex-based discrimination in the body of her EEOC Charge. For example, Common noted that two males were hired three to four weeks prior to her termination and two males were hired within four months of her termination. Docket No. 3-1 at 3. She also alleged throughout that her male

6

coworkers reaped benefits, privileges, and special working hours that she was not privy to. *Id.* at 2-3. Since she alleged sex-based discrimination throughout the text of the Charge, Common adequately exhausted her administrative remedies.

### A. Title VII Hostile Work Environment

Title VII of the Civil Rights Act makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations, quotations, and ellipses omitted).

To establish a hostile work environment claim, a Plaintiff must prove that they:

> (1) belong[] to a protected group; (2) [were] subjected to unwelcome harassment; (3) the harassment . . . was based on [their] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Further, the workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)).

In determining whether a Plaintiff has sufficiently proved a hostile work environment claim, the court considers the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal citations omitted). That standard requires an objectively hostile or abusive environment as well as the

7

victim's subjective perception that the environment is abusive. *Harris*, 510 U.S. at 21-22 (internal citations omitted).

In the present motion, JMAA says Common was not being harassed and lists other reasons she gave for the alleged harassment. Docket No. 74 at 21-25. In her response, Common does not address any of JMAA's arguments related to the hostile work environment claim. Docket No. 80. As a result, she has not satisfied her burden to demonstrate specific facts showing that there is a genuine issue suitable for resolution at trial. Consequently, the Court must grant JMAA's motion for summary judgment on the hostile work environment claim.

    **B.**    **Title VII Race and Sex Discrimination**

To establish a discrimination claim under Title VII, a Plaintiff must show that they are (1) a member of a protected class; (2) qualified for the position; (3) subjected to an adverse employment action; and (4) replaced by someone outside their protected class or treated less favorably than other similarly-situated employees outside their class. *See Newbury v. City of Windcrest, Texas*, 991 F.3d 672 (5th Cir. 2021).

    **1.**    **Pay Disparity**

In Title VII pay discrimination cases that rely solely on circumstantial evidence, the Court applies the familiar *McDonnell Douglas* burden shifting framework. *Gray v. Miss. Dep't of Rehab. Services*, No. 22-60411, 2023 WL 119636, at *1 (5th Cir. Jan. 6, 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The Plaintiff has the initial burden of establishing a prima facie case of pay discrimination by showing that she is a "member of a protected class" and was "paid less than a non-member for work requiring substantially the same responsibility." *Id.* If the Plaintiff

8

establishes the prima facie case, the burden shifts to the Defendant to provide a nondiscriminatory reason for the pay disparity. *Id.* If the Defendant satisfies its burden, the burden returns to the Plaintiff to show that the reason provided by the Defendant is pretextual or "unworthy of credence." *Id.* Where the parties have submitted contradictory evidence, the summary judgment standard requires the Court to view that evidence in the light most favorable to the nonmovant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The parties do not dispute that Common satisfies the first three prongs of the analysis. Docket No. 74 at 9–19. The last prong is the major point of contention here. *See* Docket No. 74 at 15.

JMAA argues that Common cannot identify any similarly-situated employees because of differences in duties and shifts. However, Common observes that her duties were essentially the same as the CPOs because she was functionally a CPO and because the difference in shifts does not legally affect a "similarly situated" determination. Docket No. 80 at 3 and 9. She justifies these claims through Chief McClendon's deposition testimony that the investigator work encompassed "an hour at the most" per week and that "she was still considered as a police officer, still carried the duties of a police officer." Docket No. 73-3 at 16; Docket No. 79-9 at 20.

The law here is well-established:

> [W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. . . .

> We do not, however, interpret nearly identical as synonymous with identical. Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (cleaned up).

When determining whether employees are similarly situated, the Court may consider "a multitude of relevant evidence including the job responsibilities, experience, and qualifications." *Lavigne v. Cajun Deep Foundations, L.L.C.*, 654 F. App'x. 640, 646 (5th Cir. 2016) (internal citations and quotations omitted). Job titles are not dispositive of whether proffered comparators are similarly situated. *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (internal citations and quotations omitted). This determination is made on a case-by-case basis, depending on the facts and context of each case. *Lavigne*, 654 F. App'x. at 646 (internal citations and quotations omitted).

On this record, Common has sufficiently established a prima facie case of race and sex-based discrimination. As Common has provided evidence that her and her comparators' (Jamall Christian, Eric Pierson, and James Hollowell's) duties were essentially the same, regardless of the different job titles, she and the other CPOs are similarly situated for purposes of Title VII.

At the next step, the Court turns to JMAA to see if it has articulated a legitimate, non-discriminatory reason for its pay disparity. In this case, JMAA has done so by pointing to a new salary range, differences in experience, and the flexibility of the budget at the time of hiring. Docket No. 74 at 16-17. Thus, the burden returns to Common to establish a genuine

issue of material fact as to whether JMAA's purportedly legitimate reasons for the pay discrepancy are worthy of credence or are merely pretextual.

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). In her reply brief, Common tackles each explanation JMAA provided and explains why they are unworthy of credence. Docket No. 80 at 14-15. For example, she argues that the new salary range lowered the midpoint salary and thus does not justify why her comparators hired under the new range received a salary at the highest end of the range, and why her salary did not change following the new range.

The United States Supreme Court has found that "a Plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. While such a showing will not always conclusively deem a Defendant liable, it is plain here that Common's claims meet the standard; the evidence she has provided is sufficient to establish a genuine issue of material fact.

Therefore, JMAA's motion for summary judgment, as it applies to the Title VII race- and sex-based pay discrimination claim, is denied.

    **2.    Termination**

In the termination context, the *McDonnell Douglas* burden-shifting framework works the same way, so the analysis on Common's termination claim mirrors much of the analysis on her pay disparity claim. Common focuses this part of her argument on how she was terminated and allegedly replaced by someone outside of her protected class in addition to

being treated less favorably than these alleged comparators. Docket No. 80 at 20-21. Again, JMAA's main argument is that the employees that Common named were not "similarly situated" enough to be proper comparators. Docket No. 74 at 16-17.

For the reasons just provided, the Court is satisfied that Common has established a prima facie case of discrimination. As such, the burden shifts to JMAA to state its reasons for firing Common.

Here, JMAA alleges that Common's termination was not discriminatory because it was based on a general application of its RIF criteria. A RIF is a legitimate, non-discriminatory reason for termination. *See Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 257 (5th Cir. 2017). Accordingly, the burden returns to Common at step three, pretext.

JMAA's RIF selection was to be primarily decided based on the relevance of "the job function as it relates to the need of the organization," with a focus on the "job description" and "job functions . . . not needed during times of extremely low passenger volume and operational slowdown." Docket No. 73-11. The RIF criteria further compelled the decisionmakers to consider "job tenure less than 60 days." *Id.* Accordingly, the Court will begin by considering both job description and function.

On one hand, the official job description of Common's position as an investigator was to handle all of JMAA's reported crimes. Docket No. 74. Common was the only person to hold this position, and the need for a designated role to handle criminal activity became virtually nonexistent due to the pandemic and lower operational levels. This suggests that JMAA faithfully followed its RIF criteria.

On the other hand, the above discussion has already established that Common's job function was essentially that of a CPO. And here, the evidence establishes that during the

12

RIF, JMAA did not treat Common the same way it treated other CPOs. If "job tenure less than 60 days" was truly followed, for example, JMAA would have terminated CPOs Jamal Christian and Eric Pierson before reaching Common—a relative veteran of the force. Yet JMAA's Director of Public Safety and Operations admitted in a deposition that JMAA *never* considered job tenure in determining who to fire. Docket No. 73-12 at 44.

Common further alleges that the decisionmakers provided inconsistent reasons for their layoff decisions. Docket No. 80 at 23. For example, Chief McClendon acknowledges that he based Cuba-Clayton's termination on job performance, but did not consider job performance in selecting Common for the RIF—although they were both terminated under the same RIF criteria which did not notate "job performance" as a factor. Docket No. 79-7 at 52. Further, McClendon claimed in one instance that he was not given formal guidance for determining the RIF, yet in another instance claimed to have selected employees based on the criteria. *Id.* at 47.

Taking Plaintiff's evidence as true, as the Court must, reveals "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Stennett v. Tupelo Public School Dist.*, 619 Fed. App'x 310, 317 (5th Cir. 2015) (internal citations and quotations omitted). The Court is, thus, satisfied that Common has provided ample evidence to establish a genuine issue of material fact. Therefore, JMAA's motion for summary judgment, as it applies to the Title VII race- and sex-based discriminatory termination claim, is denied.

C.     **Equal Pay Act**

Common's next claim is based on wage discrimination.

To establish a prima facie case of wage discrimination under the EPA, a Plaintiff must show that (1) they were paid less than an employee of the opposite sex, and (2) for work in a position requiring equal skill, effort, and responsibility under similar working conditions. *See Badgerow*, 974 F.3d at 617 (internal citations and quotations omitted); *see also Thibodeaux-Woody v. Houston Community College*, 593 F. App'x. 280, 283 (5th Cir. 2014); 29 U.S.C. § 206(d)(1). If the Plaintiff satisfies the initial burden, the burden then "shifts to the employer to show that the pay differential is justified under one of the EPA's four exceptions[:]" (1) a seniority system, (2) a merit system, (3) a system which measures earning by quantity or quality of production; or (4) any factor other than sex. *Thibodeaux-Woody*, 593 F. App'x. at 283; *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).

Like Common's Title VII claims, the major point of contention with the EPA claim is whether Common and her proffered comparators are in "positions requiring equal skill, effort and responsibility under similar working conditions." *Badgerow*, 974 F.3d at 617 (internal citations and quotations omitted).

Under the EPA, "[t]he equal work standard does not require that compared jobs be identical, only that they be substantially equal." 29 C.F.R. § 1620.13(a). Further, "the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance." *Id.* § 1620.13(e).

Common has pointed to sufficient evidence establishing that her role is substantially equal to other CPOs in terms of effort, skill, and responsibility. She specifically notes Chief McClendon's deposition statements in which he observes that the majority of Common's

14

work was that of a CPO and that she was still considered a police officer. *See* Docket No. 80 at 9; Docket No. 73-4 at 75-76.

It is worth noting that dissimilarities in working conditions are relevant only if they somehow explain the pay differentials. *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 723 (5th Cir. 1970). While JMAA has noted several times that Common was assigned an eight-hour shift compared to the twelve-hour shifts held by other CPOs, Docket No. 84 at 12, it did not provide any evidence of a pay differential attributed to the different shifts. Thus, a jury could find that Common and her proffered comparators are substantially equal.

Lastly, while JMAA provides numerous reasons other than sex to explain the pay differentials, they are all merely qualifications held by each comparator with no evidence quantifying the value of each factor. Docket No. 80 at 11. In the same way, Common argues that she has significant qualifications that allegedly outweigh the qualifications of her comparators. Docket No. 80 at 11-12.

In its brief, JMAA relies on *Browning v. Southwest Research Institute*, 288 F. App'x 170, 174 (5th Cir. 2008), to show that the factors they allege demonstrate the pay disparity fall within "factors other than sex" under the EPA. Docket No. 74 at 28. The court in *Browning* states that "[f]actors other than sex include . . . employees' different job levels, different skill levels, previous training, and experience." *Browning*, 288 F. App'x at 174 (internal citations, quotations, and brackets omitted). The *Browning* court also states that in EPA cases where the Defendant provides purportedly non-discriminatory reasons for the pay disparity, the courts should apply the Title VII pretext standard, shifting the burden back to the Plaintiff to show pretext. *Id.* Accordingly, we will do the same.

Since Common's arguments for her Title VII and EPA claims are substantively identical, the Court will not rehash the analysis of this issue. In following the above determination of this issue under Common's Title VII claims, the Court finds that Common has sufficiently rebutted each of JMAA's purported reasons for the differential treatment, Docket No. 80 at 11-14, requiring that a jury hear the claims in full.

Accordingly, the Court denies JMAA's motion for summary judgment as it applies to Common's EPA claim.

## IV. Conclusion

For these reasons, JMAA's motion for summary judgment is **GRANTED** as to the Title VII race- and sex-based hostile work environment claim and **DENIED** in all other respects. JMAA's motion for leave of court to file excess pages is **GRANTED**. A status conference will be set so that all may discuss returning this case to the trial calendar.

**SO ORDERED**, this the 31st day of March, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE